JUDGE SULLIVAN

15 CV 02329

MILMAN LABUDA LAW GROUP PLLC
Netanel Newberger
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042
(516) 328-8899

Attorneys for Plaintiff
Regina Fuchs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

REGINA FUCHS,

                              Plaintiff,

     -against-

JPMORGAN CHASE BANK, N.A.,

                              Defendant.

------------------------------------------------------------x

RECEIVED
MAR 27 2015
U.S.D.C. S.D. N.Y.
CASHIERS

Docket No.:

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff, Regina Fuchs ("Plaintiff" or "Ms. Fuchs"), by and through her attorneys, Milman Labuda Law Group PLLC, herein complaints of defendant, JPMorgan Chase Bank, N.A. ("Defendant") as follows:

## NATURE OF THE ACTION

1.      This complaint seeks statutory and common law damages including punitive damages for Defendant's unlawful discriminatory practices and unconscionable conduct in terminating the plaintiff, retaliating against her, and interfering with her rights in violation of the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* (the "FMLA"), the New York State Human Rights Law, New York Executive Law §§ 290 *et seq.* (the "NYSHRL") and the New York City Human Rights Law, New York City Administrative Code §§ 8-101 *et seq.* (the "NYCHRL").

## THE PARTIES

2.      Upon information and belief, Defendant is a Foreign Business Corporation with a principal place of business at 270 Park Avenue, 48th Floor, New York, New York 10017.

3.      Ms. Fuchs is a resident and domiciliary of New York and resides in Suffolk County.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter under the FMLA and 28 U.S.C. §§ 1331, 1343(4) and supplemental jurisdiction over Ms. Fuchs's state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant is located within the Southern District of New York.

## PROCEDURAL REQUIREMENTS

6.      Plaintiff has not filed, herself or through her attorneys, any action with the New York State Division of Human Rights.

7.      Plaintiff has not commenced any other court action regarding the allegations in this complaint.

## FACTS COMMON TO ALL CLAIMS

8.      In September 2011, Ms. Fuchs commenced her employment with Defendant (Brooklyn location) in a temporary position reporting to manager Sammy Budhu, in which she reviewed mortgage loans applications for sufficiency and compliance with law and company requirements prior to closing.

9.      In December 2011, upon the recommendations of both Mr. Budhu and his supervisor, Ms. Fuchs was promoted to a position in the Quality Assurance Department, where

she reviewed the files for all the departments, including loan modifications, bankruptcies and foreclosures and reported to her manager, Ulysses Rodriguez.

10.     In April 2012, Ms. Fuchs became a permanent employee and received an increase in her pay, whereupon Mr. Budhu and Mr. Rodriguez recommended Ms. Fuchs to be transferred to the Garden City office.

11.     Ms. Fuchs was accordingly transferred to the Garden City office, where she processed mortgage applications and reported to Manager Nicholas Paterakis.

12.     Mr. Budhu was also transferred to Garden City, and requested that Ms. Fuchs work the night shift (i.e. overtime hours), which was approved.

13.     Throughout the period from September 2011 to September 2012, Ms. Fuchs uniformly received only positive reviews from each and every one of her supervisors/managers: Mr. Rodriguez and Mr. Budhu confirmed that Ms. Fuchs: 1) was knowledgeable; 2) possessed a great work ethic; 3) performed her work timely and efficiently; and 4) maintained an excellent attendance record.

14.     Further, Mr. Paterakis conducted an "informal review" of Ms. Fuchs's work performance (since at the time Ms. Fuchs had not been at the company for a year), and stated that she is a "very aggressive processor."

15.     In fact, Ms. Fuchs's supervisors considered her performance of a sufficiently high caliber that she was routinely singled out to mentor other employees junior to her, and to work overtime hours.

16.     Ms. Fuchs's work load constantly increased from the period of September 2011 to September 2012.

17.     In September 2012, Ranie Bharrat became Ms. Fuchs's Team Manager.

3

18.     In December 2012, in a sudden and radical reversal, Ms. Bharrat indicated within Ms. Fuchs's performance review that she now for the first time suddenly "needs improvement."

19.     This one isolated review, flies in the face of all of Ms. Fuchs's prior positive and stellar reviews.

20.     When Ms. Fuchs, not unnaturally, requested an explanation for said evaluation, Ms. Bharrat said only that certain unidentified loan officers had indicated in November 2012 that they did not want to work with Ms. Fuchs because she would not immediately process certain files.

21.     However, any details substantiating that claim were conspicuously absent in what can best be characterized as a glaring omission.

22.     Moreover, shockingly, to date there has been no explanation why Ms. Bharrat refrained from raising this matter of presumably great import to Ms. Fuchs's attention until nearly a month later.

23.     On January 31, 2013, Ms. Fuchs requested time off pursuant to the FMLA, due to a debilitating herniated disc which required surgery.

24.     Thereafter, Ms. Fuchs on two separate occasions requested from Ms. Bharrat to process the documents required for Ms. Fuchs's FMLA leave, as Ms. Bharrat failed to process the leave after the first request by Ms. Fuchs.

25.     Upon her return to work on March 8, 2013, Ms. Fuchs submitted a requisition to Ms. Bharrat for back support for her chair (as other company employees have received upon request), inasmuch as Ms. Fuchs was still recovering from surgery, whereupon Ms. Bharrat told Ms. Fuchs to speak with an employee named Kathleen.

4

26.    Thereafter, Ms. Fuchs requested from Kathleen, the chair back support on two (2) separate occasions, but she was denied her reasonable request without explanation.

27.    As such, Ms. Fuchs was denied a reasonable accommodation, which is a clear indicia of a prima facie case of deliberate and gross violations of several statutory protections, including, but not limited to, the NYSHRL and NYCHRL.

28.    On March 12, 2013 (only <u>four (4) days</u> after her return from FMLA Leave), Ms. Fuchs was abruptly summoned to a meeting with Ms. Bharrat and Ann Jorgensen, a Senior Team Manager, at which time Ms. Fuchs was told that there were "problems" with her files when she left on her FMLA Leave.

29.    During this meeting, Ms. Fuchs was served with a 30 day warning letter, based solely on unsubstantiated complaints that loan officers had allegedly lodged to Ms. Bharrat in November 2012, <u>over four (4) months</u> prior to this March 2013 meeting.

30.    At no time prior to the meeting was Ms. Fuchs ever served with any type of disciplinary notice, warning, or suspension, or any notice of the alleged complaints lodged by previously mentioned loan officers.

31.    At the meeting, Ms. Fuchs was questioned as to why three (3) files had not been processed.

32.    Ms. Fuchs correctly explained that, to the contrary, none of her files were unprocessed- in fact, one of the files had already been submitted for underwriting right before Ms. Fuchs's FMLA Leave.

33.    Moreover, "floaters"- i.e. other employees who performed work on an as needed basis- were supposed to take over Ms. Fuchs' files under Ms. Bharrat's direction, while Ms.

5

Fuchs was away, but the "floaters" failed to attend to said files during the entire course of Ms. Fuchs's FMLA Leave.

34.     After Ms. Fuchs explained the status of her files, Ms. Jorgensen commented, in an undeniably and inexcusably snide, hostile, rude and confrontational tone, "Well, then you're ahead of the game, aren't you?"

35.     Furthermore, Ms. Fuchs, in an effort to underscore her loyalty and devotion to the company, requested a weekly review of her files with Ms. Bharrat on a temporary basis and to attend refresher classes.

36.     Ms. Bharrat, however, inexplicably refused Ms. Fuchs's eminently reasonable offers and stated instead that she would meet with Ms. Fuchs only on a monthly basis to discuss said files (presumably because Ms. Bharrat concluded more frequent reviews were unnecessary).

37.     In addition, the company never authorized Ms. Fuchs to enlist in any refresher classes, although the company incredibly later denied that Ms. Fuchs ever requested any refresher classes.

38.     On March 26, 2013, Ms. Fuchs inadvertently forwarded to a borrower an email that she had received from an underwriter with an attached underwriting decision.

39.     This is a common mistake that has been committed on multiple occasions by every member of Ms. Fuchs's group at Defendant.

40.     Moreover, the problem had been discussed at site meetings and the Site Manager, P.J. Palumo, acknowledged that the rampant problem needed to be fixed.

41.     In fact, the company's computer system ("voltage") is designed to block emails with sensitive information but for unknown reasons it did not work that day.

42.    Ms. Bharrat and Ms. Jorgensen separately spoke with Ms. Fuchs, noting that she had forwarded the email with the attachment, which is called and categorized as a "voltage violation".

43.    On March 28, 2013, now less than three (3) weeks after Ms. Fuchs returned from her FMLA Leave, Ms. Fuchs was summarily terminated by Ms. Jorgensen and Susan Harteng, another Senior Team Manager.

44.    The proffered reason for Ms. Fuchs's termination was "an HR decision" because Ms. Fuchs had a "voltage violation" and violated the company's "privacy policy".

45.    On the same day that she was terminated, Ms. Fuchs approached Human Resources and filed an internal complaint concerning her termination.

46.    Ms. Fuchs was informed by Human Resources that an investigator would be assigned to review the termination.

47.    On April 18, 2013, the investigator called Ms. Fuchs and told her that the termination was due to the "privacy policy".

48.    The investigator also stated that Ms. Jorgensen had offered Ms. Fuchs training classes that Ms. Fuchs had declined, which is false.

49.    On May 2, 2013, Ms. Fuchs was notified that Defendant was upholding its decision to terminate her based on the "privacy policy".

50.    Contrary to the past practice and treatment of similarly situated co-workers (who addressed similar workplace issues with management but did engage in statutorily protected FMLA Leave and/or were not debilitated with a physical injury protected under state and federal law), Ms. Fuchs was terminated and dismissed.

51.     The Company's decision to terminate Ms. Fuchs was in stark contrast with the far more flexible and lenient treatment shown to her co-workers without disabilities or protected activities.

52.     The discriminatory and illegal disparate treatment to which Ms. Fuchs was subjected (termination) – compared with coworkers who did not avail themselves of FMLA Leave or who were not suffering from a physical ailment protected under disability laws– creates the unequivocal inference that Ms. Fuchs's termination was as a result of disability and her utilization of statutory protected Federal Medical Leave.

53.     As the direct and proximate cause of her termination, Ms. Fuchs (a single parent), cannot provide her child with health insurance, cannot secure disability insurance and was economically forced to downgrade her life insurance.

54.     Furthermore based on the ironic time frame of her termination, Ms. Fuchs has been stripped of her pension (which would have vested had she remained employed by the company just a few more months).

55.     Lastly, the company, in what can only be described as "cut throat" fashion, to put it charitably, reprehensibly challenged Ms. Fuchs's application for unemployment insurance benefits, thereby depriving her of the most basic of human necessities, including food and shelter while still recovering from surgery.

56.     As a direct result, Ms. Fuchs's claim for unemployment insurance benefits was denied.

57.     Ms. Fuchs has been unable, despite reasonable efforts, to find comparable employment with similar benefits since her termination by Defendant.

## AS AND FOR A FIRST CAUSE OF ACTION
### (FMLA Interference)

8

58.    Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 57.

59.    Ms. Fuchs was employed by Defendant for more than 12 months and worked more than 1,250 hours during the last 12 months of her employment.

60.    Defendant engages in commerce and employs 50 or more employees within 75 miles of the Garden City office where Ms. Fuchs was employed.

61.    On January 31, 2013, Ms. Fuchs requested time off to treat her debilitating herniated disc, which required surgery.

62.    Defendant was on reasonable notice that Ms. Fuchs was entitled to FMLA leave.

63.    On March 28, 2013, Defendant denied Ms. Fuchs permanent reinstatement and terminated her employment.

64.    Defendant's actions interfered with the benefits to which Ms. Fuchs was entitled under the FMLA.

65.    Ms. Fuchs would not have been terminated but for her request for time off, and her taking time off, to treat her medical condition.

66.    Ms. Fuchs has been unable, despite reasonable efforts, to find comparable employment with comparable benefits since her termination by Defendant.

67.    As a proximate result of Defendant's interference with Plaintiff's rights under the FMLA, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, promotions, raises, bonuses, deferred compensation and other employment benefits.

68.     As a further proximate result of Defendant's bad faith violation of the FMLA, Plaintiff is entitled to liquidated damages equal to the sum of damages in the preceding paragraph.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Retaliation Under the FMLA)

69.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 68.

70.     On January 31, 2013, Ms. Fuchs requested time off to treat her debilitating herniated disc, which required surgery.

71.     Ms. Fuchs's requests for time off, and her taking time off, were protected activities under the FMLA.

72.     As a result of Ms. Fuchs's requests for time off, and her taking time off, to treat her debilitating herniated disc, Defendant terminated her employment.

73.     Ms. Fuchs was qualified for her position with Defendant.

74.     Ms. Fuchs would not have been terminated but for her request for time off and her taking time off, to treat her medical condition.

75.     Ms. Fuchs has been unable, despite reasonable efforts, to find comparable employment with comparable benefits since her termination by Defendant.

76.     As a proximate result of Defendant's retaliation against Plaintiff in violation of the FMLA, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, promotions, raises, bonuses, deferred compensation and other employment benefits.

77.     As a further proximate result of Defendant's bad faith violation of the FMLA, Plaintiff is entitled to liquidated damages equal to the sum of damages in the preceding paragraph.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Disability Discrimination under the NYSHRL)

78.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 77.

79.     Ms. Fuchs's debilitating herniated disc, surgery and subsequent recovery constitute a disability under the NYSHRL in that it is a medically diagnosable condition.

80.     Defendant regarded Ms. Fuchs as having a physical or mental impairment.

81.     Ms. Fuchs was qualified for her position with Defendant.

82.     In order to sit in her office chair for an extended period of time, Ms. Fuchs required a reasonable accommodation of back support for her chair.

83.     Ms. Fuchs immediately informed Defendant of her need for a reasonable accommodation, which request was refused.

84.     Defendant instead terminated Ms. Fuchs because she had a disability.

85.     Defendant terminated Ms. Fuchs because she requested reasonable accommodation.

86.     Defendant terminated Ms. Fuchs because it perceived her to be disabled.

87.     Defendant did not engage in any communications with Ms. Fuchs to determine the extent of her disability, actual or perceived, or otherwise engage in any interactive process to determine an effective accommodation for her disability.

88.     Ms. Fuchs would have been able to fulfill the essential functions, duties and responsibilities of her job for Defendant had she been granted reasonable accommodation.

11

89.     Defendant would not have suffered any undue hardship by granting Ms. Fuchs her requested accommodation.

90.     Defendant's conduct was in violation of the NYSHRL.

91.     Ms. Fuchs has been unable, despite reasonable efforts, to find comparable employment with comparable benefits since her termination by Defendant.

92.     As a proximate result of Defendant's discrimination against Plaintiff on the basis of her disability and Defendant's perception of her disability, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, promotions, raises, bonuses, deferred compensation and other employment benefits.

93.     As a further and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation by Defendant.

94.     As a further and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, emotional distress, and other incidental and consequential damages and expenses.

95.     The conduct of Defendant was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's protected civil rights, entitling Plaintiff to an award of punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Retaliation under the NYSHRL)

96.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 95.

97.     Ms. Fuchs was qualified for her position with Defendant.

12

98.     Ms. Fuchs engaged in a protective activity by requesting a reasonable accommodation.

99.     Defendant denied Ms. Fuchs's request and instead terminated her employment.

100.    As a proximate result of Defendant's retaliation against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, promotions, raises, bonuses, deferred compensation and other employment benefits.

101.    As a further and proximate result of Defendant's retaliation, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation by Defendant.

102.    As a further and proximate result of Defendant's retaliation, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, emotional distress, and other incidental and consequential damages and expenses.

103.    The conduct of Defendant was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's protected civil rights, entitling Plaintiff to an award of punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Disability Discrimination under the NYCHRL)

104.    Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 103.

105.    Ms. Fuchs's debilitating herniated disc, surgery and subsequent recovery constitute a disability under the NYCHRL in that it is a medically diagnosable condition.

106.    Defendant regarded Ms. Fuchs as having a physical or mental impairment.

107.    Ms. Fuchs was qualified for her position with Defendant.

108.    In order to sit in her office chair for an extended period of time, Ms. Fuchs required a reasonable accommodation of back support for her chair.

109.    Ms. Fuchs immediately informed Defendant of her need for a reasonable accommodation, which request was refused.

110.    Defendant instead terminated Ms. Fuchs because she had a disability.

111.    Defendant terminated Ms. Fuchs because she requested reasonable accommodation.

112.    Defendant terminated Ms. Fuchs because it perceived her to be disabled.

113.    Defendant did not engage in any communications with Ms. Fuchs to determine the extent of her disability, actual or perceived, or otherwise engage in any interactive process to determine an effective accommodation for her disability.

114.    Ms. Fuchs would have been able to fulfill the essential functions, duties and responsibilities of her job for Defendant had she been granted reasonable accommodation.

115.    Defendant would not have suffered any undue hardship by granting Ms. Fuchs her requested accommodation.

116.    Defendant's conduct was in violation of the NYCHRL.

117.    Ms. Fuchs has been unable, despite reasonable efforts, to find comparable employment with comparable benefits since her termination by Defendant.

118.    As a proximate result of Defendant's discrimination against Plaintiff on the basis of her disability and Defendant's perception of her disability, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, promotions, raises, bonuses, deferred compensation and other employment benefits.

119.    As a further and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation by Defendant.

120.    As a further and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, emotional distress, and other incidental and consequential damages and expenses.

121.    The conduct of Defendant was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's protected civil rights, entitling Plaintiff to an award of punitive damages.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Retaliation under the NYCHRL)

122.    Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 121.

123.    Ms. Fuchs was qualified for her position with Defendant.

124.    Ms. Fuchs engaged in a protective activity by requesting a reasonable accommodation.

125.    Defendant denied Ms. Fuchs's request and instead terminated her employment.

126.    As a proximate result of Defendant's retaliation against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, promotions, raises, bonuses, deferred compensation and other employment benefits.

127.    As a further and proximate result of Defendant's retaliation, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation by Defendant.

128.   As a further and proximate result of Defendant's retaliation, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, emotional distress, and other incidental and consequential damages and expenses.

129.   The conduct of Defendant was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's protected civil rights, entitling Plaintiff to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant judgment in her favor and against Defendant, containing the following relief:

      a. An award of Plaintiff's actual damages in an amount to be determined at trial, plus prejudgment interest, for loss of wages, benefits, and promotional opportunities, including an award of front pay compensating Plaintiff for loss of future salary and benefits;

      b. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering and emotional distress;

      c. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment;

      d. An award of punitive damages;

      e. An award of reasonable attorneys' fees to the fullest extent permitted by law and the costs of this action; and

j. Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Fed.R.Civ.P 38 (b), Plaintiff demands a trial by jury on all issues of fact and damages stated herein.

Dated: Lake Success, New York
       March 27, 2015

Netanel Newberger, Esq.
Milman Labuda Law Group PLLC
Attorneys for Plaintiff
3000 Marcus Avenue
Suite 3W8
Lake Success, NY 11042
(516) 328-8899

To:

JPMorgan Chase Bank, N.A.
270 Park Avenue
48th Floor
New York, NY 10017

17